UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GEORGE SCHOEDINGER and ) | |
| SIGNATURE HEALTH SERVICES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:04-cv-664 SNL |
| ) | |
| UNITED HEALTHCARE OF THE ) | |
| MIDWEST, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiffs George Schoedinger and Signature Health Services have filed this action in law and equity, seeking to recover monies owed to them by Defendant United Healthcare for improperly processed healthcare claims. The Court held a non-jury trial on May 16 through 17, 2006. During that trial, the Court granted a portion of Defendant's Motion for Judgment as a Matter of Law, and dismissed Plaintiffs' RICO claims for failure to state a *prima facie* case. In addition, Plaintiffs ceased pursuing their claims for Unjust Enrichment and Vexation Refusal, conceding that they were pre-empted by ERISA. The central remaining issues are: (1) whether the Employee Retirement Income Security Act (ERISA) pre-empts Plaintiffs' state law claims; (2) whether a contract existed between the parties; (3) whether Defendant violated the Missouri Prompt Payment Act (MMPA); and (4) whether Plaintiffs are entitled to injunctive relief. This matter is now ripe for disposition.

After careful consideration of all objections to exhibits and testimony taken with the case, all but one of said objections are hereby overruled, and all but one of the exhibits offered into evidence at the trial are received into evidence. Defendant's objection regarding Plaintiffs' Exhibit 178 is

sustained for failure to comply with Rule 26(a) of the Federal Rules of Civil Procedure and Rule 1006 of the Federal Rules of Evidence. All testimony will be considered by the Court and given its due weight. This Court, having now considered the pleadings, the testimony of witnesses, documents in evidence, and any other evidentiary materials submitted for the Court's consideration, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT[1]

Plaintiff Signature Health Services (Signature) is a Missouri corporation with its principal place of business in St. Louis, Missouri. Signature employs physicians in a wide array of medical fields. One of those physicians is Plaintiff George Schoedinger (Schoedinger), an orthopedic surgeon who resides in St. Louis, Missouri. As part of the Plaintiffs' business relationship, Signature is authorized to bill and collect payment on Schoedinger's behalf for the services he provides to his patients.

Defendant United HealthCare of the Midwest (United), is a Missouri corporation and a wholly owned subsidiary of UnitedHealthcare, Inc., which is a wholly-owned subsidiary of United HealthCare Services, Inc., which is a wholly-owned subsidiary of UnitedHealth Group Incorporated. United is in the business of administering health plans and providing health insurance.

---

[1] The Court's factual findings are derived from the parties' exhibits, witness testimony, and the parties' briefs. Where necessary, the Court will cite to specific evidence and/or testimony. Where more than one copy of the same exhibit has been filed by different parties, the Court will cite to only one exhibit; however, the reference should not be considered any indication of bias on the part of the Court.

Schoedinger was a participating provider in United's network. Under this agreement, patients covered by United healthcare plans were given reduced rates. But on April 15, 2003, Schoedinger terminated this agreement. From that date forward, there was no written contract between Schoedinger and United, and United's patients were charged full price for services rendered. Nevertheless, Schoedinger continued to treat United's patients and submit claims to United for payment.

The healthcare claims process is quite complicated. Initially, a patient visits a healthcare provider like Plaintiffs for treatment. Plaintiffs request insurance information from the patients, and then receive an assignment of the patients' benefits.[2] After treating the patient, Plaintiffs submit their claim to United for payment. United requires that healthcare providers follow certain procedures when submitting these claims. These requirements are set forth on United's website and in an Administrative Guide distributed to providers.

The Administrative Guide is approximately thirty pages long, and describes how to contact United, the claims process, how to read a customer identification card, United's product line, notification requirements for planned procedures, requirements for network providers, and guidelines for treating medicare patients. In a preamble before describing the claims process, the Administrative

---

[2] The assignment of benefits allows the Plaintiffs to recover directly from the insurance company for services rendered, and if necessary, bring suit to obtain past due benefits. In general, if Plaintiffs did not receive an assignment of benefits, they would have no legal cause of action against an insurance company. Therefore, Plaintiffs would have to recover any past due funds directly from the patient, who could then bring suit against the insurance company to recover the benefits due.

3

Guide states: "We know that you want to be paid promptly for the services you provide. Here's what you can do to help promote prompt payment." Pl's Ex. 165, at 3. The Guide then directs healthcare providers to register on United's website, review a customer's eligibility before providing services, notify United of any planned procedures, prepare a complete and accurate claim form using the proper Current Procedural Terminology (CPT),[3] and submit these claims electronically. *Id.* United also sets forth detailed guidelines for the notification of planned procedures, listing which procedures and services require prior notification, what sort of explanation is required, and how and when the notification is to be made. These guidelines note that "[t]his notification list may change from time to time," but that United would provide notice prior to any changes. *Id.* at 10. The notification guidelines further state that the "list does not signify coverage for benefits. Coverage is determined by the customer's benefit contract." *Id*. at 14.

United's online documentation also explains the company's policies and procedures. United provides "some basic information about working with [the company]" on a page entitled "UnitedHealthcare Policies." Pl's Ex. 162. This webpage informs healthcare providers how to verify a patient's eligibility and send claims for payment, provides tips for faster claims processing, and describes how healthcare coverage decisions are made. *Id.* The United website also contains a page entitled "Reimbursement Policy Agreement." Pl's Ex. 163. The documents states that healthcare providers "are responsible for [the] submission of accurate claims requests," that the "reimbursement policy is intended to ensure that [providers] are reimbursed based on the [CPT] code that correctly

---

[3] Providers must designate the services performed using CPT, which is a uniform numerical code developed by the American Medical Association. Each medical service and procedure is given a unique code to allow for more streamlined claims processing.

4

describes the procedure performed," and that the "reimbursement policy applies to all professionals who deliver health care services." *Id.* The webpage further states that "[t]his information is intended to serve only as a general reference resource regarding UnitedHealthcare's reimbursement policy for the services described and is not intended to address every aspect of a reimbursement situation." *Id.* And United notes that it "may modify this reimbursement policy from time to time by publishing a new version of the policy on [its] [w]ebsite." *Id.*

After a healthcare provider submits a claim for payment, United uses an automated computer system to process the claim. This computer system is designed to reduce the cost of healthcare claims through practices such as "down coding" (reading certain codes as requests for reimbursement for a less expensive service) and "grouping" (combining certain codes together as if they were one procedure). Down coding and grouping are industry practices, and are often warranted. However, United's computer system often grouped and down coded procedures at inappropriate times. The computer system also suspended many claims improperly, requested unnecessary information before processing a claim, and denied claims without proper cause. In addition, United continuously charged Schoedinger reduced rates, as if he were an in-network provider.[4]

---

[4] This in-network problem was a result of United's relationship with Coalition America. Per its agreement with certain employers, United was required to send all claims to Coalition America before processing the claims. Coalition enters into agreements with various insurance companies to share network provider agreements. Therefore, if a doctor has an in-network agreement with one company, Coalition will apply that agreement to another insurance company, thereby borrowing the in-network discount through a process called "re-pricing." Coalition America improperly listed Schoedinger as an in-network provider and consistently re-priced his claims. Plaintiffs contacted United about this problem many times. However, Coalition America did not remove Schoedinger from their in-network provider list, and United would not confirm the propriety of Coalition America's re-pricing before paying the claims. Therefore, a substantial percentage of Schoedinger's claims were improperly discounted, and no amount of notice or complaints could convince United to remedy this problem.

United's claims processing system was flawed in many ways, denying, reducing, and improperly processing claims on a regular basis. And despite innumerable requests, United was unwilling to remedy the underlying errors in its systems. United was consistently delinquent in paying claims, the amount past due ranging from $200,000 to $600,000 at any given time. And United's faulty processing of claims continued even after Plaintiffs filed suit.

United is not the only insurance company to make such errors. But in Plaintiffs' practice, United is the most egregious offender. In response, Signature created a department to verify processed claims. This department contacted United on a continuous basis, notifying United of its errors, and attempting to help the insurance company fix those problems. The claims department routinely phoned or emailed United about every unpaid claim, and continued to contact United until each claim was properly paid.

Plaintiffs lawsuit centers around 295 claims for services rendered by Schoedinger to patients covered by United healthcare plans. 289 of these claims qualify as Employee Welfare Benefit Plans under ERISA, and 6 involve non-ERISA plans.[5] 268 of the ERISA claims surround self-funded or self-insured health plans, in which the employers are financially liable for any benefits due and United serves only as the plan administrator and claims processor. 21 of the ERISA claims and all of the non-ERISA claims involve health plans that are fully insured by United. For these 27 claims, United is financially responsible for the benefits due to plan participants and serves as the plan administrator and claims processor.

---

[5] For additional findings of fact involving the six non-ERISA plans, see Attachment A.

## CONCLUSIONS OF LAW

I. **Contract Claims**

In Counts I and V of this cause of action, Plaintiffs request that the Court issue a declaratory judgment stating that there is a contract between the parties, and find that Defendant breached that contract by failing to pay claims promptly and properly.[6] Plaintiffs argue that the Defendant's online documentation and Administrative Guide constituted an open offer to healthcare providers, and that Plaintiffs accepted this offer by following Defendant's claims processing procedures and providing medical care to patients with United insurance.

The Court can find no law addressing this issue in an insurance scenario. However, Plaintiffs' argument is akin to whether an employee handbook creates a contract between employers and their employees. Therefore, the Court will take its guidance from Missouri common law examining the contractual effect of employee handbooks.

---

[6]Plaintiffs cause of action addresses two sets of claims – those for the ERISA based claims and those for the non-ERISA claims. Defendant does not contest that a contract existed for the 6 non-ERISA plans, which stemmed from the patients' assignment of rights. Defendant concedes that it did breach its contract with these patients, and as an assignee, Plaintiffs may bring a cause of action for this breach. During the course of the litigation, Defendant paid the principal amount owing on these claims, and the interest due will be discussed below. However, as to the ERISA claims, Plaintiffs cannot bring a common law suit as an assignee because it would be pre-empted by ERISA. The remainder of this discussion focuses on whether Plaintiffs have a contract with Defendant, independent of the rights assigned to Plaintiffs by their patients.

In Missouri, "employee handbooks generally are not considered contracts because they normally lack the traditional prerequisites of a contract." *McIntosh v. Tenet Health Sys. Hosps., Inc./Lutheran Med. Ctr.*, 48 S.W.3d 85, 89 (Mo. Ct. App. 2001). The case *Johnson v. McDonnell Douglas Corp.*, 745 S.W.2d 661 (Mo. 1988), is the seminal case on this issue. In *Johnson*, an employee brought a claim of wrongful discharge against her employer, claiming that an employment contract formed when the employer distributed an employee manual. The Missouri Supreme Court found that an employer's "unilateral act of publishing its handbook [is] not a contractual offer to its employees." *Id.* at 662. Instead, it is "an informal statement of [the employer's] self-imposed policies." *Id.* The employee handbook in *Johnson* often employed general language, and noted that the rules were subject to change. Therefore, "a reasonable at will employee could not interpret its distribution as an offer to modify his at will status." *Id.* Because the employee handbook did not constitute an offer, no contract was formed.

Like in *Johnson*, United's online documents and Administrative Guide did not create a contract. Initially, neither set of documents contain language which could be interpreted as "a manifestation of willingness to enter into a bargain." Restatement (Second) of Contracts § 24 (1981). In addition, the documents contain generalized language and put the reader on notice that the claims procedures could change in the future. The online documents state that they contain "some basic information about working with us." Pl. Ex. 162. And that the "information is intended to serve only as a general reference resource regarding UnitedHealthcare's reimbursement policy." Pl. Ex. 163. Further, United noted that it might "modify this reimbursement policy from time to time by publishing a new version of the policy." *Id.* The Administrative Guide, although more detailed than the online documentation, is simply an instruction manual, nothing more.

A contract cannot form without an offer. Because Defendant's online documentation and Administrative Guide did not constitute an offer, there was no contract between Plaintiffs and Defendant. Without a contract, there can be no breach. *See Volker Court, LLC v. Santa Fe Apartments, LLC*, 130 S.W.3d 607, 611 (Mo. Ct. App. 2004). Therefore, Plaintiffs have not established their entitlement to relief for breach of contract and are not entitled to a declaratory judgment.

## II. <u>Missouri Prompt Payment Act</u>

Plaintiffs next claim that Defendant's failure to promptly pay the 295 claims constituted a violation of the MMPA, Mo. Rev. Stat. § 376.383. Defendant claims that ERISA pre-empts the MMPA on 289 of the claims and that Plaintiffs failed to follow the requirements to state a claim under the MMPA.[7]

<u>ERISA Pre-Emption</u>

ERISA "supercede[s] any and all State laws insofar as they ... relate to any employee benefit plan." 29 U.S.C. § 1144(a). "A law 'relates to' an employee benefit plan ... if it has a connection with or reference to such a plan." *Id*. at 96-97. A state law may "relate to" and therefore be pre-empted even if the state law was not designed to affect benefit plans and its effect on such plans is

---

[7]Defendant also argues that the MMPA does not apply to the 268 self-funded benefit claims because Defendant was not a "health carrier" within the meaning of the statute. As stated below, the Court finds that the MMPA is pre-empted by ERISA. Therefore the Court need not address this issue.

9

incidental. *Johnston v. Paul Revere Life Ins.*, 241 F.3d 623, 630 (8th Cir. 2001). However, "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Airlines*, 463 U.S. 85, 100 n.21, 103 S.Ct. 2890, 77 L.Ed2d 490 (1983). To determine whether a state law has a "connection with" an ERISA plan, the Court is directed to "look both to the objectives of the ERISA statute as a guide to the scope of the state law that Congress understood would survive, as well as the nature of the effect of the state law on ERISA plans." *Parkman v. Prudential Ins. Co. of Am.*, 439 F.3d 767, 771 (8th Cir. 2006) (internal quotations omitted).

The main purpose of the ERISA pre-emption clause "was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 657, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). Therefore, courts are "reluctant to tamper with [the] enforcement scheme embodied in the statute by extending remedies not specifically authorized by its text." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210, 122 S.Ct. 702, 151 L.Ed.2d 635 (2002).

The law currently at issue is the Missouri Prompt Payment Act, Mo. Rev. Stat. § 376.383. Pursuant to the MPPA, if an insurer fails to pay, deny, or suspend a claim within a specified amount of time, a claimant is entitled to interest and penalties. A claimant is defined as "any individual, corporation, legal association, partnership or other legal entity asserting a right to payment ... under a health benefit plan." Mo. Rev. Stat. § 376.383.1(1).

10

Plaintiffs cite *Baylor Univ. Med. Ctr. v. Ark. Blue Cross Blue Shield*, 331 F. Supp. 2d 502, 511-12 (N.D. Tex. 2004), for the premise that prompt payment statutes are not pre-empted by ERISA. *Baylor* examined a Texas statute that required insurance companies to pay the claims of physicians and other healthcare providers in a timely manner. The court found that the law impacted ERISA plans "only tenuously, remotely, or peripherally" and refused to "insulate an insurer from liability against a third-party health care provider seeking to enforce its rights under a state statute that requires prompt payment of claims." *Id.* at 511.

However, in *Baylor* the court examined a prompt payment statute that differed from Missouri's in one important respect – the law did not apply to plan participants. In fact, the court rested its ruling upon this very issue:

> The substance of Baylor's statutory claims are governed by state laws that enforce the prompt payment of claims by insurers-not to plan participants or beneficiaries, but to independent health care providers. Nothing in ERISA prevents the Texas legislature from making this determination. By enforcing the Texas statutes at issue, plan participants' actual obligations under the terms of their various plans would remain constant and the plans' terms would be unmodified. Baylor's statutory claims, thus, do not directly affect the relationship between traditional ERISA entities.

*Id.* at 511-12. Because Missouri's law is applicable to plan participants and beneficiaries, the MPPA is pre-empted by ERISA. Enforcing the Missouri statute at issue would alter a plan participant's actual obligations under his or her plan.

"[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna Heath Inc. v. Davila*, 542 U.S. 200, 210, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004). The MMPA allows any individual to bring a civil action and recover

11

penalties if an insurance company does not pay claims in accordance with Missouri's standards.  This has a substantial effect on ERISA plans, and is expressly pre-empted by 29 U.S.C. § 1144(a).. *See In re Life Ins. Co. of N. Am.*, 857 F.2d 1190, 1194 (8th Cir. 1998) (making a similar finding as to the Missouri vexation refusal statute).  Therefore, the MMPA does not govern any actions involving the 289 ERISA claims.

Missouri Prompt Payment Act Requirements

The MMPA imposes penalties on health carriers that fail to process claims in a timely manner. There are two major penalty provisions in the statute.  The first requires that a health carrier pay a claim within forty-five days of receipt of the claim, otherwise the health carrier must pay the claimant one percent interest per month on the unpaid balance of the claim.[8]  Mo. Rev. Stat. § 376.383.5.  The second provision is more involved.  Initially, if a health carrier does not "pay, deny or suspend" an insurance claim within forty days of its receipt, and the healthcare provider notifies the carrier of this deficiency after the fortieth day, "the health carrier shall, in addition to monthly interest due, pay to the claimant per day an amount of fifty percent of the claim but not to exceed twenty dollars for failure to pay all or part of a claim or interest due thereon or deny or suspend as required by this section."  Mo. Rev. Stat. § 376.383.6.  This first tier of penalties accrues for thirty days, and then ceases unless the claimant subsequently "provides a second written or electronic notice," informing the health carrier that the claim is unpaid and that the claimant will seek penalties under the MMPA.

---

[8]Section 376.383.6 specifies that the penalties are to end after the claim is paid, or upon the filing of a lawsuit.  However, the Missouri legislature remained silent as to when the interest penalties are to stop.  The Court interprets the legislature's silence as meaning that the interest penalties cease accruing when the amounts due are paid.

*Id.* If the claimant provides such notice, the penalty continues to accrue until the health carrier "pays, denies or suspends the claim" or the claimant files a petition to collect the penalties, whichever is sooner. *Id.*

The Plaintiffs have proven that Defendant did not pay, deny, or suspend the six non-ERISA claims within forty-five days of receiving the claim. Therefore, under the clear language of the MMPA, Plaintiffs are entitled to one percent monthly interest for the six unpaid or partially paid non-ERISA claims. This interest is to be calculated from the forty-fifth day after Defendant received notice of the claim up until the date of final payment. Through testimony, Plaintiffs also established that they consistently notified Defendant about the unpaid or partially paid claims, and worked with the Defendant on a regular basis to collect the funds due. Therefore, the Court finds that Plaintiffs notified Defendant about the deficiencies more that forty days after the claim was filed. Plaintiffs established their right to collect under the first tier of penalties in Section 376.383.6. This penalty accrues for thirty days, or until Defendant paid, denied, or suspended the claim, whichever was earlier. However, Plaintiffs have not established their right to penalties under the second tier of the statute. Although Plaintiffs often provided electronic notice of the delinquencies, this notice did not inform Defendant that Plaintiffs would seek penalties under the MMPA. Therefore, Plaintiffs are not entitled to the second level of penalties set forth in Section 376.383.6. Accordingly, Plaintiffs may recover damages totaling $6,208.62 for Defendant's MMPA violations.[9] In addition, the Court finds that Defendant failed to pay these claims and penalties without reasonable cause, therefore Plaintiffs

---

[9] See Attachment A.

are entitled to "reasonable attorney fees for services necessary for recovery." Mo. Rev. Stat. § 376.383.6.

### III. ERISA

In the alternative to their state law causes of action, Plaintiffs brought a claim for breach of contract and breach of fiduciary duty under 29 U.S.C. § 1132. Defendant does not dispute Plaintiffs' right to recover on the 289 ERISA claims, and both parties agree that the principal amount due is $28,874.04. The Court will also grant Plaintiffs' request for prejudgment interest. *See Kennedy v. Georgia-Pacific Corp.*, 31 F.3d 606, 611 (8th Cir. 1994) ("Awards of prejudgment interest are discretionary under ERISA); *Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 752 (8th Cir. 1986) ("As a general rule, prejudgment interest is to be awarded when the amount of the underlying liability is reasonably capable of ascertainment and the relief granted would otherwise fall short of making the claimant whole because he or she has been denied the use of money which was legally due").

The prejudgment interest is to be determined in accordance with 28 U.S.C. § 1961. *Sheehan v. Guardian Life Ins. Co.*, 372 F.3d 962, 969 (8th Cir. 2004). The interest is to be calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield," which is currently 5.07%. 28 U.S.C. § 1961. The interest accrues from the date Schoedinger performed the medical service through the date of final judgment. *Sheehan*, 372 F.3d at 969. However, the Court requires additional briefing before ruling upon the total amount of interest due.

Pursuant to 28 U.S.C. § 1132(g)(1), the Court has discretion to award reasonable attorney's fees and costs to either party. A prevailing plaintiff in an ERISA action "rarely fails to receive fees." *Starr v. Metro Sys., Inc.*, 461 F.3d 1036, 1041 (8th Cir. 2006). Courts are to examine five non-exclusive factors when making this determination:

> (1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances; (4) whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Id*.

At trial, Plaintiffs provided evidence of Defendant's wanton behavior – United continuously processed claims improperly, long after it was made aware of its mistakes. Despite countless requests by Plaintiffs, Defendant refused to remedy its errors, at times owing up to $600,000 in past due fees. Defendant states that its mistakes were a result of computer error, not purposeful deception. However, it was within Defendant's power to remedy these errors. It chose not to. Therefore, the Court finds that the first factor supports an award of attorney's fees.

As to the second factor, United is a large insurance company with vast resources. This factor also supports an award of attorney's fees.

With regard to the third factor – whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances – the Court finds that this also supports an award of attorney's fees. At trial, Schoedinger testified as to the damage done by

15

insurance companies that improperly process claims on a regular basis. Whether it be purposeful or negligent, insurance companies regularly reduce and deny claims without cause, thereby increasing the cost of healthcare to providers and patients alike. If it became cost prohibitive for insurance companies to engage in this behavior, it would incentivize more accurate claims administration and processing in the future.

Plaintiffs' lawsuit sought to benefit only the Plaintiffs, not all participants and beneficiaries of an ERISA plan. The lawsuit did raise a new issue: whether the MMPA is superceded by ERISA. This legal question does involve ERISA itself, and is arguably significant. Therefore, the fourth factor tilts marginally in favor of an award of attorney's fees.

As to the final factor, the relative merits of the parties claims, the Court has found that Plaintiffs were entitled to recover on their ERISA claims and some of their state law claims. Thus, the fifth factor also supports awarding Plaintiffs attorney's fees. Therefore, in accordance with the factors set forth in *Starr*, the Court finds that Plaintiffs are entitled to recover all reasonable attorney's fees and costs incurred in this action.

**IV.    Common Law Injunctive Relief**

Lastly, Plaintiffs seek injunctive relief under Missouri law.[10] Pursuant to state statute, a plaintiff may obtain an injunction when "an irreparable injury to real or personal property is

---

[10]Because several of the claims at issue involve non-ERISA plans, Plaintiffs' common law claim for injunctive relief is not pre-empted by ERISA.

16

threatened, and to prevent the doing of any legal wrong whatever, whenever in the opinion of the court an adequate remedy cannot be afforded by an action for damages." Mo. Rev. Stat. § 526.030. Therefore, Plaintiffs must establish: (1) the likelihood of irreparable harm absent injunctive relief, and (2) the absence of an adequate remedy at law. *Kelly v. Golden*, 352 F.3d 344, 353 (8th Cir. 2003). Once a plaintiff makes this showing the Court may, in its discretion, grant an injunction.

In Plaintiffs proposed order for injunction, they suggest that this Court require that United follow Plaintiffs' suggested claims processing procedures. This Court is not in the insurance business, and will not impose such exacting restrictions upon a corporate entity.

In addition, Plaintiffs have an adequate remedy – it is provided through ERISA and state law. *See Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1005 (8th Cir. 2004) (patient with long-term disability could not seek injunction against insurance company because ERISA created an adequate remedy at law). Plaintiffs claim that there is no adequate remedy because ERISA does not allow for the recovery of attorney's fees, thus Plaintiffs cannot be made whole through successive suits. Despite Plaintiffs' assertions, ERISA does allow a court to award reasonable fees and costs, and as stated above, the Court awarded such fees to Plaintiffs. Plaintiffs also claim that legal remedies are inadequate because of the time, energy, and resources Plaintiffs must spend to collect money from United. However, these complaints are insufficient for the Court to take such a drastic step. Therefore the Court declines to issue an injunction in this matter.

**CONCLUSION**

Plaintiffs' state law claim for breach of contract as to the 289 ERISA claims fails because there was no independent contract between the parties. Neither the Administrative Guide nor the online documentation contained any statements that could be construed as an offer to contract. Plaintiffs' sole remedy for the contractual breach is as an assignee of patients' benefits. As an assignee, Plaintiffs established their right to recover for breach of contract on the six non-ERISA claims. The remainder of Plaintiffs' breach of contract claims are pre-empted by ERISA. Because Defendant paid the principal amount owing on these six claims during the course of the litigation, any monetary recovery is limited to that provided under the MMPA. Plaintiffs' claims under the MMPA are also pre-empted by ERISA. The statute allows a patient to bring suit for an insurer's failure to pay benefits in a prompt manner, therefore the MMPA relates to ERISA and extends remedies that are not specifically authorized by federal law. However, Plaintiffs have established their right to recover under the MMPA for the six non-ERISA claims, and are entitled to $6,208.62 in interest and penalties. Plaintiffs' rights under ERISA were never disputed, and they shall recover the principal amount due and owing on these claims, which is $28,287.04. Plaintiffs are also entitled to prejudgment interest and the reasonable attorney's fees and costs accrued in this action. Finally, the Court refuses Plaintiffs' petition for injunctive relief. Their requests are overly broad, and Plaintiffs have an adequate remedy at law. Therefore, equitable relief is not warranted.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs George Schoedinger and Signature Health Services shall have judgment against Defendant United Healthcare of the Midwest in the amount of $34,495.66.

**IT IS FURTHER ORDERED** that the parties shall submit supplemental briefs as to the amount of prejudgment interest and Plaintiffs' reasonable attorney's fees and costs on or before November 17, 2006.

Dated this 6th day of November, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE