# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| **GEORGE SCHOEDINGER, M.D., et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | No. 4:04CV664-SNL |
| | ) | |
| **UNITED HEALTHCARE OF THE MIDWEST, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

The Court requested the parties to submit supplemental briefs on attorney's fees and costs, and prejudgment interest. For the reasons discussed below, the Court awards plaintiffs attorney's fees and costs, and prejudgment interest as follows:

Statement of the Case

The following statement of the case is taken in large part from the Memorandum and Order entered on November 6, 2006 (#91-1). Plaintiffs George Schoedinger, M.D. and Signature Health Services, Inc., initially filed this action in state court to recover monies owed to them by United Healthcare of the Midwest, Inc. (United) for improperly processed healthcare claims. United removed the case to the federal district court, and a bench trial was conducted in May 2006.

Signature Health Services, Inc. (Signature) is a Missouri corporation with its principal place of business in St. Louis, Missouri, and employs Schoedinger, an orthopedic surgeon who lives and practices in St. Louis. Signature bills and collects payment on Schoedinger's behalf for

services he provides to his patients who are (in the present case) participants or beneficiaries of health plans insured or administered by United. United is a Missouri Corporation and a wholly-owned subsidiary of UnitedHealthcare Services, Inc., a wholly-owned subsidiary of UnitedHealth Group, Inc. United both administers health plans and provides health insurance.

Schoedinger was a participating provider in United's network of providers. In-network providers are paid discounted rates for services; out-of-network providers are paid undiscounted rates. On April 15, 2005, Schoedinger terminated this network agreement. From that date there was no written contract between Schoedinger and United, and United patients were charged full price (and Schoedinger should have been paid undiscounted rates for services provided). Schoedinger continued to treat United patients and submit claims to United for payment.

As noted in the memorandum and order, the healthcare claims process is quite complicated. A patient visits a healthcare provider (here Schoedinger) for services. The healthcare provider requests insurance information from the patient and receives an assignment of the patient's benefits. The assignment of benefits allows the healthcare provider to recover directly from the insurance company (here United, either as the insurer or the administrator and claims processor) for services rendered and, if necessary, to bring suit to obtain past-due benefits. After providing services, the healthcare provider submits a claim to the insurance company for payment. United requires healthcare providers to accurately designate services provided using numerical codes (CPT) developed by the American Medical Association.

United uses a computer system to process claims. The computer system is programmed to reduce costs (where appropriate) by "down coding" (reading certain CPT codes as requests for a less expensive service) and "grouping" (combining certain CPT codes as if they were a single

procedure). Down coding and grouping are industry practices. According to plaintiffs, however, United's computer system often inappropriately grouped and down coded, improperly suspended claims, unnecessarily requested additional information, and denied claims without proper cause. For example, plaintiffs claimed that United continued to classify (and pay) Schoedinger erroneously as an in-network provider after April 2005 (when he withdrew from the provider network).

Although plaintiffs repeatedly complained to United about the inaccuracies and delays in claims processing, United did not change its claims processing or computer system and (at times) owed plaintiffs as much as several hundred thousand dollars in unpaid claims. According to plaintiffs, they created a separate office department just to notify United about and pursue errors and unpaid claims.

In April 2004 plaintiffs (understandably frustrated) filed a lawsuit against United in state court, seeking payment of its claims for services on state law grounds. United removed the case to federal district court on the ground that the Employee Retirement Income Security Act of 19784 (ERISA), 29 U.S.C. § 1144(a), completely preempted state law, insofar as state law related to any employee benefit plan (health insurance). In the second amended complaint, plaintiffs claimed breach of contract (count I), violation of the Missouri Payment of Claims statute (count II), unjust enrichment (count III), vexatious refusal to pay (count IV), sought declaratory judgment (that there is a contract between the parties and that United breached that contract by failing to pay claims promptly and properly) (count V) and injunctive relief (count VI), civil RICO violations (count VII), and sought payment under ERISA for benefits due (29 U.S.C. § 1132(a)(1)(B)) (count VIII), and for breach of fiduciary duty (29 U.S.C. § 1132(a)(3) (count IX).

Of the 295 claims at issue in the case, 289 involved employee welfare plans under ERISA,

and 6 involved non-ERISA plans. Of the 289 ERISA claims, 268 involved self-funded or self-insured plans, for which United served only as the plan administrator and claims processor (the employers are financially responsible for benefits). The other 21 ERISA claims and the 6 non-ERISA claims involved plans insured by United. For these 27 claims, United is responsible for benefits and also serves as the plan administrator and claims processor.

The Court dismissed the civil RICO count. Memorandum and Order at 1 (#83) (count VII).

United did not contest that a contract existed for the 6 non-ERISA plan claims (for which plaintiffs had an assignment of rights from the patients) and conceded that it breached its contract with these patients. Following a bench trial, the Court found that for the 289 ERISA claims, there was no contract between Schoedinger and United under state law on the basis of the employee handbook, the on-line plan documents or the plan administrative guide, and so there was no claim for breach of contract or declaratory judgment. Id. at 8-9 (counts I and V). The Court found ERISA preempted the Missouri Prompt Pay Act and other state law with respect to the 289 ERISA plan claims. Id. at 12-13 (count II (in part)). Before trial, plaintiffs acknowledged that counts III (unjust enrichment) and IV (vexatious refusal to pay) were preempted by ERISA). The Court found that United failed to promptly pay the 6 non-ERISA claims and awarded damages in the amount of $6,208.62. Id. at 13 (part of count II). The Court also awarded plaintiffs reasonable attorney's fees because United failed to pay the claims without reasonable cause. Id. 13-14.

United did not dispute plaintiffs' right to recover on the 289 ERISA claims, and the parties agreed that the principal amount due for those claims is $28,874.04. Id. at 14 (count

VIII). The Court awarded plaintiffs prejudgment interest at the rate of 5.07%, pursuant to 28 U.S.C. § 1961(a). Memorandum and order at 14 (rate equal to weekly average one-year constant maturity Treasury yield, which the Court identified as "currently 5.07%"). The Court also awarded plaintiffs reasonable attorney's fees and costs pursuant to 28 U.S.C. § 1132(g)(1) (ERISA authorizes a court "in its discretion" to allow a reasonable attorney's fee and costs of action to either party). Memorandum and Order at 15-16. "Although an award of attorney's fees is not mandatory, there is a presumption that a prevailing plan beneficiary [here the healthcare provider] should recover reasonable attorney's fees unless 'special circumstances' would make such an award inequitable." Emmenegger v. Bull Moose Tube Co., 33 F. Supp. 2d 1127, 1131 (E.D. Mo. 1998) (citation omitted).

The Court considered the five factors listed in case law when making this decision. Id. at 15, citing Starr v. Metro Systems, Inc., 461 F.3d 1036, 1041 (8th Cir. 2006). The court noted that plaintiffs had provided evidence of United's wanton behavior. Memorandum and Order at 15 ("United continuously processed claims improperly, long after it was made aware of its mistakes. Despite countless requests by [p]laintiffs, [United] refused to remedy its errors. . . ."). The Court noted that United could afford to pay attorney's fees. Id. The Court decided that an award of attorney's fees might have a future deterrent effect under similar circumstances. Id. The Court noted that plaintiffs sought only to benefit themselves, not all participants and beneficiaries of an ERISA plan; however, the Court noted that the lawsuit did raise a new issue, whether the Missouri Prompt Payment Act was preempted by ERISA, an issue which the Court characterized as "arguably significant." Id. at 16 (ERISA preemption is a challenging issue). Finally, the Court considered the relative merits of the parties' claims, noting that plaintiffs were entitled to recover

on the ERISA claims and some of the state law claims.  Id.

The Court denied injunctive relief.  Id. at 17 (count VI).

Accordingly, of the counts in the second amended complaint, plaintiffs prevailed under ERISA with respect to the 289 ERISA plan claims (count VIII) and under the Missouri Prompt Payment Act for the 6 non-ERISA claims (part of count II), but did not prevail on their state law breach of contract claims (count I), the Missouri Prompt Payment Act with respect to the 289 ERISA claims (most of count II), unjust enrichment (count III), vexatious refusal to pay (count IV), declaratory judgment (count V), injunctive relief (count VI), or breach of fiduciary duty under ERISA (count IX).  Nonetheless, although plaintiffs were not successful on most of their state law theories for relief or on their civil RICO count (for example, because their state law counts were preempted or failed to state a claim under RICO), they did recover their unpaid claims, with some minor adjustments.

Pre-Judgment Interest

The parties do not dispute that plaintiff is entitled to pre-judgment interest, but do differ as to the calculation of the amount.

In the Court's order of November 6, 2006 pre-judgment interest was granted plaintiff on $28,874.04 representing plaintiff's right to recover on 289 ERISA claims.  (The amount was inaccurately calculated as $28,287.04 on page 18 of the order).  The order provided that the interest was to be calculated at 5.07%.  28 U.S.C. § 1961.

Defendant paid 281 claims before trial, and eight were disputed at trial.  Plaintiff claims he should receive $38,195.50 interest on 283 claims and $16,754.69 interest on the disputed claims or $54,950.19.  He also requests interest of $17.75 per day from November 7, 2006 through

December 21, 2006 and $18.63 per day from January 1, 2007 to the date of final judgment. (Plaintiff's response to defendant's supplemental brief, p. 4). This is pre-judgment interest "compounded annually" through the date of judgment. Burch v. Hartford Life & Acc. Ins. Co., 383 F. Supp. 2d 1119 (W.D. Ark. 2005).

Defendant calculates the amount as $25,389.07 plus $6.08 per day from November 18, 2006 to the date of judgment. (Defendant's response to plaintiff's brief in support of pre-judgment interest, p. 6).

Although the Court is uncertain as to plaintiff's precise calculation of the $54,950.19 interest claimed; it is obviously far in excess of the 5.07% granted. Accordingly, defendant's assessment more clearly meets the Court's original order and the statute, 28 U.S. C. § 1961.

The Court will therefore award pre-judgment interest as follows:

1.  Interest at 5.07% to November 17, 2006                                        $25.389.07

2.  Interest at 6.08% per day from November 18,                                   $ 1,732.80
    2006 to August 28, 2007
    (285 days @ $6.08)
                                            Total                                 $27,121.87

## Attorney's Fees & Costs

Reduction for Limited Success

United next argues the Court should greatly reduce the award of attorney's fees and costs for limited or partial success. United argues that "the vast majority of such fees and costs were incurred during [p]laintiffs' prosecution of entirely unsuccessful causes of action." Defendant's supplemental brief at 2. United argues plaintiffs did not prevail on the request for declaratory judgment (as to the existence of a contract between the parties), for statutory penalties under the

Missouri Prompt Payment Act (for the 289 ERISA claims), for civil RICO violations, and for injunctive relief. United argues that these unsuccessful causes of action took up much of the discovery and trial. United notes that before trial it conceded that it owed plaintiffs for the ERISA claims and the non-ERISA claims and the amounts (and even paid the ERISA claims for the most part).

United argues that plaintiffs unnecessarily complicated what were simple ERISA claims to recover benefits (the ERISA claims) and simple contract claims (the non-ERISA claims), especially since United conceded what it owed plaintiffs before trial. United argues that most of the discovery and much of the briefing and trial involved plaintiffs' unsuccessful causes of action or theories for relief, especially the state law claims preempted by ERISA and the civil RICO claims.

Plaintiffs agree that before trial United paid the ERISA claims but not the non-ERISA claims. Plaintiffs argue that although the non-ERISA claims were few in number compared with the ERISA claims, they prevailed on all of them. Plaintiffs characterize this as "an unmitigated success." Plaintiffs' response to defendant's supplemental brief at 5. Plaintiffs further argue that they were forced to investigate and litigate this case solely because of United's "wanton behavior." Id. Plaintiffs also argue that a reduction for limited success is not warranted because the unsuccessful and successful claims were factually and legally interrelated and because the vigorous litigation of all the claims, including the unsuccessful ones contributed to the overall, successful outcome and should not result in a reduction for limited success. Id. Plaintiffs argue that their attorney's fees, at their standard hourly rate, is $362,123.70, plus costs and expenses, $15,723.71. Plaintiffs' memorandum in support at 10.

Other reductions

Plaintiffs also argue that no reduction for "billing judgment" is required. Plaintiffs argue that counsel submitted invoices that were sufficiently detailed in terms of time and tasks performed. Plaintiffs also argue that the Court should allow the cost of computerized legal research as part of the award of reasonable attorney's fees. Plaintiffs also argue that the Court should determine the lodestar rate using the market rate and not the actual rate billed to the client, which, counsel argues, was a discounted rate. Plaintiffs note that the case required extensive discovery and analysis and research of novel and challenging questions involving federal and state law.

Plaintiffs also request costs and expenses incurred by managed care specialist Nancy Glass in investigating and preparing for litigation ($78,393.99).

Settlement Offer

United also argues that the Court should not award plaintiffs any attorney's fees and costs after April 27, 2006, the date when United made a substantial settlement offer. United argues that plaintiffs did not recover after trial more than this substantial offer. United argues that it offered plaintiffs what it owed on the ERISA and non-ERISA claims, interest (calculated at 12%) and $50,000 in attorney's fees. United also argues that plaintiffs attended a court-ordered mediation proceeding in September 2005, but were not prepared to participate in good faith. United does not expressly argue that its offer was a valid offer under Fed.R.Civ.P. 68, but argues that the Court can consider substantial settlement offers in determining an award of reasonable attorney's fees. United argues that this case should not have gone to trial. In United's view, this case involved essentially simple contract claims which plaintiffs needlessly complicated with meritless claims for declaratory judgment, injunctive relief, statutory penalties and civil RICO claims.

Plaintiffs argue that when viewed in context, United did not make a substantial settlement offer. Plaintiffs argue that United insisted on mediation before completion of discovery, that plaintiffs objected on the ground that mediation was premature, and that plaintiffs agreed to participate in mediation after discovery. Plaintiffs argue that, at the first mediation session, United made no offer. Plaintiffs argue that even though United knew that plaintiffs strongly believed that an injunction was necessary (to correct the computerized processing of claims), United did not offer any assurances about correcting the mishandling of claims. Plaintiffs argue that, even after litigation of this case, United has not changed it computer system and that plaintiffs are even now owed more than $200,000 in unpaid claims.

Plaintiffs remind the Court that this litigation was caused solely by what the Court has already described as the wrongful conduct of United. Plaintiffs note that they were compelled to spend considerable time and money reviewing nearly three hundred claims and investigating and preparing for trial. Plaintiffs also argue that the settlement offer did not comply with Fed.R.Civ.P. 68 (although without specifying exactly how the offer was deficient). Plaintiffs' response to defendant's supplemental brief at 9. Plaintiffs argue that the Court may still award attorney's fees even if a settlement offer is rejected.

The general principles for determining an award of attorney's fees are well-known. "[W]here a plaintiff's claims for relief involve a common core of facts or are based on related legal theories, a court determining an appropriate fee award 'should focus on the significance of the overall relief obtained . . . in relation to the hours reasonably expended on the litigation.'" Emmenegger v. Bull Moose Tube Co., 33 F. Supp.2d at 1140, citing Hensley v. Eckerhart, 461 U.S. 424, 435 (1983). Here, the claims for relief involved a common core of facts. The Court

notes that the litigation involved considerable time and effort in understanding healthcare claims processing. In addition, some of the legal theories were related. For example, ERISA and the Missouri Prompt Payment Act and the various state law contract theories were related. However, the same cannot be said of the civil RICO claim, which required considerable time and effort (and no doubt caused much anxiety to defend).

Plaintiffs were very successful to the extent that they recovered the unpaid claims. They were less successful in terms of the legal theories they advanced; they recovered under ERISA (and the Missouri Prompt Payment Act on the non-ERISA claims), but lost on preemption (because ERISA preempted most of their state law claims) and failed to state a civil RICO claim. These were significant and difficult legal issues, particularly at the time this litigation began several years ago. The Court believes that a one-third reduction reflects this limited degree of success.

The Court has considered the settlement offer made by defendant and that plaintiffs recovered less than the monetary elements of the settlement offer. However, the Court finds that plaintiffs reasonably rejected the settlement offer for non-monetary reasons (which were not part of the settlement offer) because they believed that injunctive relief was crucial (plaintiffs sought to correct the claims processing process) (and even though injunctive relief was ultimately denied).

The Court agrees that the hourly rate should be the standard hourly rate and not the discounted hourly rate. The relevant hourly rate is the market rate (considering such factors as expertise, experience, locale) and not the rate to which counsel and the client agreed. See e.g., Central States, Southeast & Southwest Areas Pension Fund v. Central Cartage Co., 76 F.3d 114, 115. 116 (7th Cir.), cert. denied, 519 U.S. 811 (1996); cf. Blum v. Stenson, 465 U.S. 886 (1984)

(litigant represented by nonprofit legal aid society could recover fees computed at market rate for similar legal work).

Without considering a precise exercise of calculating attorney time devoted to unsuccessful requests made by plaintiff, the Court finds a substantial amount of work was spent on those requests. While some of the work on different items may have been interrelated to the successful endeavors of plaintiff's counsel, nevertheless, there should be a deduction for the attorney time spent in the unsuccessful areas. Accordingly, the Court will deduct $120,707.90 from the attorney's fee request of $362,123.70 and award an attorney's fee of $241,415.80.

The Court will award costs (pursuant to Fed.R.Civ.P. 54, 28 U.S.C. § 1920) and expenses in the sum of $15,723.71, but denies the expenses claimed for Nancy Glass. The Court does not deny that Ms. Glass's assistance was helpful in the preparation and litigation of the case, however, she is not an attorney, legal assistant or law clerk. Even though Glass testified for plaintiff he has presented no authority permitting him to recover fees charged by an outside expert. Ryther v. Kare, 864 F. Supp. 1525. See also Patton, et al. v. Simon Property Group, Inc., et al., slip copy, 2007 W.L. 2236 732 (E.D. Ark.) (costs of experts in preparation of exhibits is denied).

Conclusion

The Court therefore finds that plaintiffs should recover from defendant the following amounts:

| | | |
|---|---|---|
| 1. | Pre-Judgment Interest | $ 27,121.87 |
| 2. | Attorney's Fees | $241,415.89 |
| 3. | Costs | $ 15,723.71 |
| | Total | $284,261.47 |

Dated this   28th   day of August, 2007.

_____
SENIOR UNITED STATES DISTRICT JUDGE